IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LAWRENCE GOFORTH, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:11-CV-0711-D |
| VS. § | |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

<u>MEMORANDUM OPINION</u>

Plaintiff Lawrence Goforth ("Goforth") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits. For the reasons that follow, the Commissioner's decision is affirmed.

I

On June 12, 2009 Goforth applied for a period of disability and disability benefits alleging disability due to a blood clot in his right eye and tendinitis that became disabling on June 1, 2008. His application was denied initially and on reconsideration. At Goforth's request, a hearing was conducted before an administrative law judge ("ALJ"). The ALJ followed the five-step sequential process prescribed in 20 C.F.R. § 404.1520(a)(4) and concluded that (1) Goforth had not engaged in substantial gainful activity since June 1, 2008,

the alleged onset date; and (2) Goforth had medically determinable impairments of mild crepitus of the right knee and an area of blindness in the right eye from a blood clot, but he did not have a severe impairment or combination of impairments and, accordingly, was not disabled within the meaning of the Act.[1]  Goforth's request for review of the ALJ's decision was denied by the Appeals Council, and the ALJ's decision became the final decision of the Commissioner.

Goforth now seeks judicial review, arguing that the ALJ's finding that he did not have a severe impairment is the result of an application of an incorrect legal standard and is unsupported by substantial evidence.

II

A

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam).  "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th

---

[1] Because the ALJ determined at step two of the five-step sequential process that Goforth was not disabled within the meaning of the Act, he did not address the remaining three steps.

Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

B

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2006). In determining whether an applicant is disabled, the ALJ follows a five-step sequential analysis. *See, e.g., Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the ALJ finds that the claimant is disabled or is not disabled at any step in the analysis, the analysis is terminated. *Id.* Under the five-step sequential inquiry the Commissioner considers whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant's impairment is severe, (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404.1520, Subpart P, Appendix 1, (4) the impairment prevents the claimant from doing past relevant work, and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *See*, *e.g.*, *Leggett*, 67 F.3d at 563-64 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4) (2011). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that

supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id*. Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id*. The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

Goforth maintains that, under the standard for severity articulated in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the evidence of record fails to support a finding that his vision impairments are not severe.

A

"[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at

1101 (internal quotation marks and citation omitted).  According to the medical evidence in the record, Jennifer Stone, O.D. ("Dr. Stone") performed an eye examination of Goforth on April 18, 2005.  She reported that Goforth had uncorrected vision of 20/60 in his right eye, which was not correctable due to a retinal scar, and 20/40 in his left eye, which was correctable to 20/20.  Goforth had reported on January 11, 2005 that part of the vision in his right eye was obscured due to a car accident that had occurred ten to twelve years earlier.  Dr. Stone also reported that Goforth's peripheral vision was full to both the left and right fields of both eyes.  Dr. Stone fitted Goforth with distance glasses for driving, and there is no record that Goforth sought further medical treatment for his visual difficulties after April 18, 2005.

In addition to the foregoing medical evidence, Goforth testified at the hearing that he had worked as a bagger/inspector at Fleischmann's Yeast ("Fleischmann's").  Goforth monitored a production line until, more than one year before the hearing, he was terminated as part of a reduction in force ("RIF").  Goforth also testified that if Fleischmann's had not undergone the RIF, "[i]t's possible" he could still be working at that job.  R. 25.  When asked whether his vision caused him problems at his job at Fleischmann's, Goforth responded that "[a]t the time it wasn't as noticeable."  R. 31.  Goforth also testified that he does not maintain a driver license because he "do[es] pretty much everything out of [his] left eye" and does not trust himself to drive.  *Id.* at 32.  Goforth stated that he is completely blind in one area of his right eye and that he has trouble putting a cable TV plug in the back of his

TV because he is unable to tell where the wire is and has difficulty judging depth. But he also admitted that his vision impairment does not affect his ability to sweep, clean up, cook, and do various activities around the house that do not require depth perception. Additionally, in the "Function Report - Adult" that Goforth completed as part of the submission of his claim, he stated that he currently cares for a diabetic, including helping her with her injections, and he is able to go for walks to different places, watch TV, and work on his computer network.

B

The ALJ concluded that Goforth's impairments are minimal and would not interfere with his ability to work. Goforth contends that the ALJ's finding is unsupported by substantial evidence because the ALJ relied on Dr. Stone's medical report, which is dated more than three years before Goforth's disability onset date, and therefore is not material to the severity of his condition during the relevant time period. Goforth also contends that, at a July 2009 consultation, he reported that his vision became bad as a result of a blood clot caused by an automobile accident that had happened four to five years before that consultation, and that it is therefore "quite possible" that the April 2005 eye examination may be dated prior to the accident that resulted in his disability. P. Br. 6.

Goforth posits that his medical complaints are supported by medical evidence from his July 2009 consultative examination by Kanu A. Patel, M.D. ("Patel"), a cardiologist, who noted that, on examination, Goforth had visual acuity of the left eye with glasses of 20/30,

but that Goforth had practically 0 visual acuity of the right eye, even with glasses. Patel also noted that Goforth had a defect in the upper quadrant of the right eye and unremarkable visual field examination of the left eye.

In response, the Commissioner argues that, contrary to Goforth's suggestion, Dr. Stone's evaluation did not take place prior to the automobile accident because, during Goforth's March 23, 2010 administrative hearing, he testified that the automobile accident occurred eight years previously, or sometime in 2002. Additionally, a medical report dated January 11, 2005 states that the automobile accident that caused part of Goforth's vision to become blocked occurred "10-12 yr[s]. ago." R. 201. The Commissioner argues that although Dr. Stone's evaluation occurred three years before Goforth's alleged onset date, her evaluation is still pertinent because there is no evidence that Goforth sustained any further injury to his right eye, that Goforth sought medical treatment for any disease that would account for deterioration in his vision, or that Goforth sought a new eyeglasses prescription. Finally, the Commissioner posits that the ALJ properly gave more credence to Dr. Stone's evaluation than he gave to Dr. Patel's, because Dr. Stone is a vision specialist (an optometrist) and Dr. Patel is not, and because Dr. Stone's evaluation was supported by reported diagnostic testing, whereas Dr. Patel reported no diagnostic testing to support his conclusions regarding Goforth's vision.

The court holds that substantial evidence supports the ALJ's conclusion that Dr. Stone's evaluation occurred after the automobile accident that caused Goforth's vision

impairment. Although Dr. Patel's report notes that Goforth claimed to have been in a motor vehicle accident "4 or 5 years ago," it also notes that Goforth was "somewhat vague in providing [a] chronology of his medical problems." R. 180. Other documentary evidence and Goforth's hearing testimony support the finding that the accident that caused the scarring in his right eye, which Dr. Stone noted in her report, occurred before Dr. Stone's evaluation. Moreover, although Dr. Stone evaluated Goforth's vision in 2005, her evaluation is the only one conducted by a vision specialist. The ALJ did not commit reversible error in affording more weight to the opinion of a vision specialist (even a non-physician) than the opinion of a physician practicing in an unrelated field. *See*, *e.g.*, *Beasley v. Barnhart*, 191 Fed. Appx. 331, 334 (5th Cir. 2006) (per curiam) (noting that "a specialist's opinion is afforded greater weight than a generalist's."). Moreover, the fact that Dr. Patel, a cardiologist performing a consultative examination, noted that Goforth's "right eye [was] practically 0 even with glasses" does not negate the substantial evidence, discussed above, that Goforth's vision impairments would not be expected to interfere with his ability to work. R. 181.

IV

Goforth also argues that the ALJ used the incorrect legal standard in evaluating his claim.

A

Goforth contends that although the ALJ cited to the Fifth Circuit's decision in *Stone v. Heckler*, the standard he cited as the severity standard is incorrect. *See Stone*, 752 F.2d

at 1101. The ALJ indicated in his decision that an impairment is not severe if it does not "significantly limit"[2] a claimant's ability to work. R. 15. Goforth posits that the correct severity standard under *Stone* is that an impairment may be found not severe "only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone*, 752 F.2d at 1101. He argues that because the ALJ failed to apply the *Stone* standard in determining severity, the court must remand the case.

In *LeBlanc v. Chater*, 83 F.3d 419, 1996 WL 197501 (5th Cir. Mar. 21, 1996) (per curiam) (unpublished opinion), a panel of the Fifth Circuit held that "where the record in a disability insurance case clearly establishes that both the *Stone* and CFR standard is satisfied, remand is not necessary." *Id.* at *2; *see also Henderson v. Astrue*, 2011 WL 540286, at *9 (N.D. Tex. Feb. 15, 2011) (Fitzwater, C.J.) (affirming ALJ decision where under either the CFR standard or the *Stone* there was substantial evidence to support the ALJ's severe impairment findings). The panel explained that, where the result will not change and neither the court nor the parties benefit from "chant[ing] the magical 'slight impairment' incantation" of *Stone*, it is imprudent to remand." *LeBlanc*, 1996 WL 197501, at *2.

In this case, there is substantial evidence to support the ALJ's conclusions under both the 20 C.F.R. 404.1520(c) standard (on which the ALJ appears to have relied) and the

---

[2] "Significantly limit" is the language used in 20 C.F.R. 404.1520(c), which states that an impairment is not "severe" if it does not "significantly limit[]" the claimant's physical or mental ability to do basic work activities.

standard articulated in *Stone*, 752 F.2d at 1101. As explained above, in addition to the medical and other evidence of record, Goforth's testimony establishes that his condition is a slight abnormality that has not interfered with his ability to work. Goforth currently cares for a diabetic, is able to perform basic household chores, and is able to watch TV and work on his computer network. This evidence, in addition to the medical evidence in the record, supports the ALJ's finding that Goforth's impairment does not constitute a "disability"; it is a "slight impairment," as defined in *Stone*.

* * *

Accordingly, for the reasons explained, the Commissioner's decision is AFFIRMED.

December 12, 2011.

SIDNEY A. FITZWATER
CHIEF JUDGE